**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOSEPH R. ELIE JR., 714 LEX ACQUISITION LLC CCSM LLC,   301-305 WEST 125 LLC, FLATBRUSH DELAWARE HOLDING LLC, 3684 NOSTRAND AVE. ASSOCIATES LLC, 837 UTICA AVENUE LLC, and 600 BROADWAY PARTNERS LLC on behalf of themselves and all others similarly situated,** | **Index No.: 1:24-cv-3319** |
| **Plaintiffs** | **CLASS ACTION COMPLAINT** |
| **v.** | **JURY TRIAL DEMANDED** |
| **THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF BUILDINGS and JAMES S. ODDO, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF BUILDINGS,** | |
| **Defendants.** | |

Plaintiffs, JOSEPH R. ELIE JR., 714 LEX ACQUISITION LLC, CCSM LLC, 301-305 WEST 125 LLC, FLATBRUSH DELAWARE HOLDING LLC, 3684 NOSTRAND AVE. ASSOCIATES LLC, 837 UTICA AVENUE LLC, and 600 BROADWAY PARTNERS LLC (collectively "Plaintiffs"),  on behalf of themselves and all others similarly situated, by and through their undersigned attorneys, file this Class Action Complaint against Defendants, THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF BUILDINGS, (together, "Corporate Defendants") and JAMES S. ODDO, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF BUILDINGS,  ("Individual Defendant" and together with Corporate Defendants, "Defendants") and state as follows:

## I.    INTRODUCTION

1.    Plaintiffs file the present action for declaratory and injunctive relief and damages, on behalf of themselves and all others similarly situated, for violations of their due process rights

under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983, stemming from the New York City Department of Buildings' ("DOB") unconstitutional building and construction code enforcement process and ensuing continued noncompliance civil penalties.

2.      New York City (the "City") enforces its building and construction laws through the DOB codes and regulations, whereby it reviews and issues permits and licenses, inspects buildings, and enforces compliance with the City's construction code. *See generally* N.Y.C. Admin. Code Title 28, ch. 1-10 (Construction Code); NYC Admin. Code Title 28, ch. 7 (Building Code).

3.      As part of its Building Code enforcement policy and process, Defendants issue two types of fines (referred to by DOB and herein as "civil penalties") for code violations. One set of civil penalties can be challenged through the City's Environmental Control Board/Office of Administrative Trials and Hearings (ECB/OATH)[1]. These civil penalties are referred to as "reviewable civil penalties." The other set of civil penalties bypass the judicial system and are imposed directly by Defendants. They can never be challenged or appealed. For these fines, the cited party has one sole option: full payment without due process. These "unreviewable civil penalties" are the core of this Complaint.

4.      Pursuant to its policy and practice, Defendants issue unreviewable civil penalties for many different infractions.

5.      Upon information and belief, Defendants issue unreviewable civil penalties for no less than fourteen (14) different infractions.

6.      Some of the unreviewable civil penalties are issued in conjunction with and in

---

[1] For the fines where a cited party is afforded an appeals process, Defendants require full payment of the fines owed as a condition precedent to the appeals process. In many instances, this represents a significant impediment on the ability of a cited party to challenge the fairness or amount of any citation issued and is designed to discourage and deter appeals.

addition to reviewable civil penalties. Other unreviewable civil penalties are issued independently of any reviewable civil penalties.

7.      The common thread of all unreviewable civil penalties is the penalty is imposed without affording the cited party a fair hearing or meaningful, impartial review. Instead, Defendants simply ignore their basic due process obligations.

8.      These unreviewable civil penalties may not be challenged or appealed, and as such violate the cited party's due process rights under the Fourteenth Amendment. Plaintiffs file the present action for the deprivation of said rights.

9.      While the government has a legitimate interest in ensuring that construction sites and buildings are safe, this interest may only be achieved in a manner consistent with constitutional mandates of due process. Defendants' procedures and practices for prosecuting violations of its building and construction laws do not come close to meeting these standards.

## II.      JURISDICTION AND VENUE

10.      Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

11.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

12.      Venue is proper in this federal district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims alleged in this Complaint have occurred in this district and because a substantial portion of the property that is the subject of this action is located in this district.

## III.      PARTIES

13.      Plaintiff Joseph R. Elie Jr. ("Plaintiff Elie") is a resident of the Borough of Queens,

New York. Plaintiff Elie owns a residential building located at 109-15 Springfield Boulevard, Queens, New York 11429.  Starting in 2021, Defendants subjected Plaintiff Elie to the DOB's unconstitutional code enforcement process and ensuing continued non-compliance civil penalties, in violation of Plaintiff Eli's due process rights, resulting in actual damages.

14.     Plaintiff 714 Lex Acquisition LLC ("Plaintiff Lex Acquisition") is a limited liability company with its principal place of business in New York, New York. Plaintiff Lex Acquisition owns a building at 714 Lexington Ave., New York, New York 10022. Starting in 2023, Defendants subjected Plaintiff Lex Acquisition to the DOB's unconstitutional code enforcement process and ensuing continued non-compliance civil penalties, in violation of Plaintiff Lex Acquisition's due process rights, resulting in actual damages.

15.     Plaintiff CCSM LLC is a limited liability company with its principal place of business in Brooklyn, New York. Plaintiff CCSM LLC owns a building located at 7626 Fifth Avenue, Brooklyn, New York 11209. Starting in 2021, Defendants subjected Plaintiff CCSM LLC to the DOB's unconstitutional code enforcement process and ensuing continued non-compliance civil penalties, in violation of Plaintiff CCSM LLC's due process rights, resulting in actual damages.

16.     Plaintiff 301-303 West 125 LLC ("Plaintiff West 125 LLC") is a limited liability company with its principal place of business in New York, New York. Plaintiff West 125 LLC owns a building located at 301-303 West 125th Street, New York, New York 10027. Starting in 2021, Defendants subjected Plaintiff West 125 LLC to the DOB's unconstitutional code enforcement process and ensuing continued non-compliance civil penalties, in violation of Plaintiff West 125 LLC's due process rights, resulting in actual damages.

17.     Plaintiff Flatbush Delaware Holding LLC ("Plaintiff Flatbush LLC") is a limited

liability company with its principal place of business in New York, New York. Plaintiff Flatbush LLC owns a building located at 1007 Flatbush Avenue, Brooklyn, New York 11226. Starting in 2021, Defendants subjected Plaintiff Flatbush LLC to the DOB's unconstitutional code enforcement process and ensuing continued non-compliance civil penalties, in violation of Plaintiff Flatbush LLC's due process rights, resulting in actual damages.

18.     Plaintiff 3684 Nostrand Ave. Associates LLC ("Plaintiff Nostrand LLC") is a limited liability company with its principal place of business in New York, New York. Plaintiff Nostrand LLC owns a building located at 3684 Nostrand Avenue, Brooklyn, New York 11229. Starting in 2023, Defendants subjected Plaintiff Nostrand LLC to the DOB's unconstitutional code enforcement process and ensuing continued non-compliance civil penalties, in violation of Plaintiff Nostrand LLC's due process rights, resulting in actual damages.

19.     Plaintiff 837 Utica Avenue LLC ("Plaintiff Utica LLC") is a limited liability company with its principal place of business in New York, New York. Plaintiff Utica LLC owns a building located at 837 Utica Avenue, Brooklyn, New York 11203. Starting in 2024, Defendants subjected Plaintiff Utica LLC to the DOB's unconstitutional code enforcement process and ensuing continued non-compliance civil penalties, in violation of Plaintiff Utica LLC's due process rights, resulting in actual damages.

20.     Plaintiff 600 Broadway Partners LLC ("Plaintiff Broadway Partners") is a limited liability company with its principal place of business in New York, New York. Plaintiff Broadway Partners owns a building located at 600 Broadway, New York, New York 10012. Starting in 2023, Defendants subjected Plaintiff Broadway Partners to the DOB's unconstitutional code enforcement process and ensuing continued non-compliance civil penalties, in violation of Plaintiff Broadway Partner's due process rights, resulting in actual damages.

21.     Defendant The City of New York (the "City") is a municipal corporation organized under the laws of the State of New York. The City's officers and employees carry out the City's unconstitutional and procedurally deficient policies, customs and practices associated with prosecuting violations of the City's building and construction codes and ensuing continued non-compliance civil penalties.

22.     Defendant NYC Department of Buildings (the "DOB") is a municipal corporation organized under the laws of the State of New York. The DOB's unconstitutional and procedurally deficient policies, customs and practices associated with prosecuting violations of the City's building and construction codes and ensuing continued non-compliance civil penalties, have deprived Plaintiffs of their procedural due process rights under the Fourteenth Amendment.

23.     Individual Defendant James S. Oddo ("Defendant Oddo") is the Commissioner of Buildings at New York City Department of Buildings. Defendant Oddo was personally involved in the unconstitutional deprivation of Plaintiffs' rights within the meaning of 42 U.S.C. § 1983 based on the fact that he is a supervisory official, and he (1) has failed to remedy the violations since he became Commissioner of Buildings, and (2) has created or continues a custom or policy under which unconstitutional practices occurred or (3) has been grossly negligent in managing subordinates who caused the unlawful conditions, events and practices, or (4) has actively encouraged, aided and abetted other defendants or city officials such as building inspectors in the violation of Plaintiffs' constitutional rights through exhortation, speech, and/or the exercise of his supervisory powers.

## IV.     THE DOB CODE ENFORCEMENT PROCESS

24.     The DOB administers the City's construction code (the "Construction Code"), which includes the City's building code (the "Building Code"), in addition to reviewing and

issuing permits and licenses, and enforcing compliance with the Construction Code. *See generally* N.Y.C. Admin. Code Title 28, ch. 1-10 (Construction Code); NYC Admin. Code Title 28, ch. 7 (Building Code).

25.     Citations for Code violations issued by the DOB lead to two types of civil penalties, categorized as deriving from either reviewable or unreviewable violations. According to the DOB, there are "two types of violations our inspectors issue . . . . One type of violation is heard at the [ECB/OATH]. The other can generally be resolved administratively **by working directly with us**."(emphasis added).[2] This reference to an administrative resolution for certain (unreviewable) code violations in essence means that for these offenses, the cited party has but one option: payment of all unreviewable civil penalties imposed as a result of the unreviewable code violation without due process.

### A. Reviewable civil penalties for certain violations

26.     The DOB's Administrative Enforcement Unit processes summonses and violations issued by the DOB's inspection and safety and enforcement units and prosecutes summonses and violations before the City's Office of Administrative Trials and Hearings (the "OATH"), Hearings Division — the central administrative tribunal for the City — which holds hearings on Environmental Control Board ("ECB") cases ("ECB/OATH hearings"). *See generally* N.Y.C. Admin. Code Title 28, ch. 2 (enforcement); N.Y.C. Charter ch. 45-A (OATH); N.Y.C. Charter ch. 45-A,§ 1049-a (Environmental Control Board); 48 R.C.N.Y. §§ 1-01–7-08 (OATH).

27.     OATH is the central administrative tribunal for the City. It conducts "adjudicatory hearings for all agencies of the city." N.Y.C. Charter ch. 45-A, § 1048(1). It has general jurisdiction

---

[2]  *See* N.Y.C. Buildings, Department of Buildings Guide to: Violations, accessible at https://www1.nyc.gov/assets/buildings/pdf/violations-guide-english.pdf  (last visited March 21, 2024).

and the heads of City agencies may elect to have any matter heard before OATH.

28.     Upon determining that there has been a reviewable Code violation, the DOB issues a notice of violation, initiating the enforcement process. N.Y.C. Admin. Code § 28-204.1.

29.     The notice of violation provides (1) the hearing date; (2) an order to correct and certify; (3) "the violating conditions observed along with the infraction code, class, standard penalty, maximum penalty, violation details, and remedy"; and (4) instructions for the recipient. *Id.* The notice informs the person responsible for the building of the violation, "acts as a summons to an ECB/OATH hearing," and "orders the respondent to correct the violation." 48 R.C.N.Y. §6-08(c).

30.     After receiving the summons, a cited party must appear at the hearing in front of an OATH Hearing Officer.

31.     If an OATH Hearing Officer finds a violation after a hearing, he or she imposes one or several civil penalties.

32.     The civil penalty amount is established by the DOB. Under OATH rules of procedure, OATH hearing officers do not have the discretion to alter or waive a penalty amount.[3] For instance, civil penalties for Class One violations range from $1,000 to $25,000. 1 R.C.N.Y. § 102-01(k).

33.     Thus, if an infraction is found, the Hearing Officer has no discretion except to impose the penalty deemed by the prosecuting party to be appropriate.

**B. Unreviewable civil penalties for certain violations**

34.     Defendants also impose unreviewable civil penalties for certain alleged violations

---

[3] *See* OATH, Civil penalties, *accessible at* https://www1.nyc.gov/site/oath/clerks-office/civil penalties. page (last visited Nov. 6, 2020) ("Hearing Officers do not have the discretion to alter or waive a penalty amount because all civil penalties are set by law.").

of the DOB Code.

35.    In contrast to the process afforded to cited parties for reviewable civil penalties, these civil penalties are not initiated with a notice of violation or a summons and bypass OATH.

36.    Upon information and belief, no notice is provided to the cited party before an unreviewable civil penalty is imposed.

37.    Nothing in the DOB code or rules describes a process by which an unreviewable civil penalty for a violation may ever be reviewed by a neutral adjudicator, except for the DOB choosing to request the City's attorney to institute legal proceedings to compel correction of the code violation if the cited party does not comply. N.Y.C. Admin. Code § 28-219.2.1.

38.    Indeed, there is no process by which a cited party may request review or challenge an unreviewable civil penalty for a violation before remitting payment to the DOB and there is no mechanism in the City's laws, ordinances, rules, or policies that requires the City to return any civil penalties paid pursuant to unreviewable violations even when any related reviewable violations have been found to be invalid or withdrawn by the City.

       **a.**    **Unreviewable civil penalties for violations issued for a delay in correcting an immediately hazardous condition**

39.    Upon information and belief, Defendants issue unreviewable civil penalties for at least fourteen distinct violations.

40.    Some of these are issued in conjunction and in addition to reviewable civil penalties.

41.    One such unreviewable civil penalty is for the failure to timely certify that a condition that gave rise to a reviewable civil penalty has been "corrected" to the satisfaction of the DOB.

42.    Every notice of violation associated with a reviewable civil penalty includes the

"commissioner's order to correct the violating condition and file a certification with the DOB that the condition has been corrected." N.Y.C. Admin. Code § 28-204.2; *see also* 1 R.C.N.Y. § 102-01(c).

43.    In actuality, in order for an alleged violation of the Code to be deemed "corrected," the cited party must not only physically fix the Code violation but must also: (i) file a notarized affidavit with the DOB certifying that the violation has been corrected, and (ii) pay any unreviewable civil penalties imposed. The DOB demands that the cited party include documentary proof and swear under penalty of perjury that they corrected the violation.[4] Put another way, simply correcting a violation is insufficient to avoid civil penalties for the violation—the property owner must do all these things to come into compliance.

44.    Failing to correct the violation is an independent violation on top of the initial violation. N.Y.C. Admin. Code § 28-202.2.

45.    The failure to correct and to certify the correction of a violation constitutes a new violation of the Code and subjects the cited party to additional civil penalties that may be imposed in addition to the civil penalties stemming from the underlying violations. N.Y.C. Admin. Code §§ 28-204.4, 28-219.1; 1 R.C.N.Y. § 102-01(c)(9).

46.    Construction Code violations leading to reviewable civil penalties are divided into three classifications: immediately hazardous (Class One), major (Class Two), and lesser (Class Three). N.Y.C. Admin. Code §§ 28-201.2–201.2.3.

47.    Immediately hazardous violations must be corrected "forthwith." § 28-204.2.

---

[4] *See* N.Y.C. Buildings, AEU2: Certificate of Correction, *available at* https://www1.nyc.gov/assets/buildings/pdf/aeu2.pdf (last visited March 21, 2024); N.Y.C. Buildings, Instructions: AEU2 Certificate of Correction Instructions, https://www1.nyc.gov/assets/buildings/pdf/aeu2ins.pdf (last visited March 21, 2024).

48.    Failure to correct an immediately hazardous violation "forthwith" will lead to the imposition of **<u>unreviewable</u>** civil penalties.

49.    For instance, the penalty for failing to certify the correction of an immediately hazardous condition (Class One) ranges from $1,500 to $5,000, payable directly to the DOB. *See* N.Y.C. Admin. Code § 28-219.1; 1 R.C.N.Y. § 102-05(a).

50.    Such civil penalties are unreviewable and are in addition to any civil penalties imposed at a hearing at OATH.

51.    Because such civil penalties are unreviewable, they deprive the cited party of due process. Indeed, these unreviewable civil penalties are often imposed well before the cited party appears at an OATH hearing to contest the reviewable civil penalties, yet no due process is afforded to contest the unreviewable civil penalties.

52.    Upon information and belief, no notice is given to cited parties that such unreviewable civil penalties have been imposed.

53.    In addition, a respondent often must perform some form of construction work to correct the violating condition. This will necessitate the respondent to first obtain a work permit from the DOB.

54.    The amount of time that the DOB will take to issue a permit varies. However, upon information and belief, it takes around two months for the DOB to issue a construction permit to respondents familiar with the City's process. For unsophisticated respondents, the DOB may consider a permit for up to four-to-six months before it is issued. Despite the fact that this waiting period constitutes part of a cited parties' affirmative steps to make corrections, they are nonetheless subject to additional unreviewable civil penalties for continued noncompliance.

55.    Thus, the DOB will issue a reviewable violation. This automatically triggers the

requirement to correct the condition forthwith. In an attempt to comply and correct, a respondent is required to obtain a permit, which the DOB may delay for many months. While the respondent is diligently attempting to correct the condition by obtaining a permit from the DOB, the DOB will issue additional, unreviewable civil penalties because the correction was not performed "forthwith."

56.     These additional civil penalties are unreviewable, as there is no mechanism or process that allows the cited party to challenge or appeal the assessment of these additional civil penalties.

**b.     Unreviewable civil penalties for performing work without a permit**

57.     Another example of unreviewable civil penalties imposed in conjunction with a reviewable civil penalty is for performing work without a permit.

58.     In this instance, the DOB automatically imposes a separate, unreviewable civil penalty every time a respondent receives a civil penalty associated with a reviewable violation and begins or completes corrections without a work permit. Payment of the unreviewable civil penalty is required before issuance of a work permit and/or acceptance of a certificate of correction. 1 RCNY 102-04.

59.     This unreviewable penalty may be up to $16,000 and is often no less than $6,000. NYC Admin. Code §28- 213.1 and 1 RCNY 102-04.

60.     The DOB will not issue any work permit until this unreviewable civil penalty is paid.

61.     This unreviewable penalty is in addition to any penalty imposed at the hearing. N.Y.C. Admin. Code § 28-213.3.

62.     The additional civil penalty for performing work without a permit is unreviewable,

as there is no mechanism or process that allows the cited party to challenge or appeal the assessment of these additional civil penalties.

### c.       Unreviewable civil penalties for failure to file a façade report

63.     Other unreviewable civil penalties imposed by Defendants are unconnected to reviewable summonses.

64.     One such unreviewable penalty is that imposed for failing to timely file a façade inspection report.

65.     Buildings in New York City that are greater than six stories must perform an inspection of their façade by a licensed engineer every five years. *See generally*, NYC Admin. Code §28 -302 and 1 RCNY 10 3 -04.

66.     The engineer must file a report with the DOB indicating the safety status of the building.

67.     The DOB will impose an unreviewable penalty against any building that fails to timely file its façade inspection report.

68.     The penalty amount is $1,000 per month and $5,000 per year, for a total of $17,000 for every year of delay.

69.     Upon information and belief, no notice is provided by the DOB to any party that a façade report is due.

70.     The DOB will not accept filing any future façade report until such unreviewable civil penalties are paid. Thus, the DOB forces payment of current unreviewable civil penalties with the threat of even more unreviewable civil penalties.

71.     These civil penalties are unreviewable, as there is no mechanism or process that allows the cited party to challenge or appeal the assessment of these additional civil penalties.

**d.      Unreviewable civil penalties for failure to inspect an elevator**

72.      Another example of unreviewable civil penalties issued by Defendants is that for failing to perform elevator inspections and timely filing the required test report and affirmation of corrections. *See generally* NYC Admin. Code §28-304, 1 RCNY 103-02.

73.      Buildings in New York City that contain elevators must perform periodic inspections of the elevators.

74.      The DOB will impose an unreviewable penalty of up to $5,000 to buildings that fail to perform the required elevator inspections and timely file the required test report and affirmation of corrections.

75.      In order for a late-filed test report and/or affirmation of correction to be accepted by Defendants, the cited party must first pay all imposed unreviewable civil penalties or be subjected to continued fines for noncompliance.

76.      These civil penalties are unreviewable, as there is no mechanism or process that allows the cited party to challenge or appeal the assessment of these additional civil penalties.

**e.      Unreviewable civil penalties for failure to inspect a boiler**

77.      Another example of unreviewable civil penalties issued by Defendants is that imposed for failing to file a boiler inspection report and affirmation of corrections. *See generally* NYC Admin. Code § 28-303, 1 RCNY §103-01, §103-5.

78.      Buildings in New York City that contain boilers must perform periodic inspections of the boilers.

79.      The DOB will impose an unreviewable penalty of at least $1,000 per device to buildings that fail to perform and file the required boiler inspections.

80.      In order for a late-filed test report and/or affirmation of correction to be accepted

by Defendants, the cited party must first pay all imposed unreviewable civil penalties or be subjected to continued fines for noncompliance.

81.    Upon information and belief, no notice is provided by the DOB to any party that the boiler inspection must be performed.

82.    These civil penalties are unreviewable, as there is no mechanism or process that allows the cited party to challenge or appeal the assessment of these additional civil penalties.

**C. Effects of unresolved DOB violations**

83.    Failing to resolve a notice of violation or attend the ECB/OATH hearing results in default, such that "[w]ithout any further notice and in lieu of a hearing, ECB/OATH will deem all facts alleged in the summons admitted, find the respondent in violation, assess civil penalties, and mail the decision to the respondent." 48 R.C.N.Y. § 6-20(a)

84.    Civil penalties imposed pursuant to default "can be up to five times higher than the standard penalty." *See* 1 R.C.N.Y. § 102-01(k).

85.    All notices of violation are public information and, once issued, the City places the information online on the Buildings Information System (BIS).[5] BIS is a database that can be searched by address and includes a host of information about property, such as complaints, DOB violations, ECB/OATH violations, certificates of occupancy, particular restrictions a property may face due to its location, and so on. Banks and title companies check the information when conducting property title searches, and open violations can prevent an owner from selling or refinancing.

86.    The DOB will not issue new or amended certificates of occupancy when DOB violations are open.

---

[5] Available at http://a810-bisweb.nyc.gov/bisweb/bispi00.jsp (last visited March 21, 2024).

87.     Amounts not paid within 30 days of the date of entry are subject to interest (at the same rate as unpaid real property taxes). N.Y.C. Admin. Code § 28-204.6.5. All unpaid judgments, including any assessed interest, become liens upon the property. N.Y.C. Admin. Code §§ 28-204.6.2, 28-204.6.6. A narrower category of offenses become tax liens on the property. N.Y.C. Admin. Code § 28-204.6. The government may force the sale of the property to enforce its lien. N.Y.C. Admin. Code § 28-204.6.6.

88.     Money collected by the DOB goes to the City's General Fund.

89.     Upon information and belief, small property owners make up a larger percentage of the property owners receiving notices of violations than all other kinds of respondents, such as large developers and owners of midtown Manhattan skyscrapers.

90.     Upon information and belief, the City has prioritized issuing notices of violation to small property owners in general, and homeowners in particular, because these respondents are unfamiliar with the City's complex and opaque administrative prosecution procedures, which often lead to respondents inadvertently accumulating additional fines.

91.     In particular, the fact that "correcting" a violation means both fixing the cause of the violation *and* filing an affidavit with the DOB certifying that the violation was corrected leaves many respondents exposed to additional civil penalties and loss of the ability to mitigate the civil penalties the DOB has issued to them. This is particularly true where the corrections require cited parties to secure building permits—a process that can take several months.

### V.     DEFENDANTS SUBJECTED PLAINTIFFS TO UNREVIEWABLE CIVIL PENALTIES FOR ALLEGED CONTINUED DOB CODE NONCOMPLIANCE IN VIOLATION OF DUE PROCESS

92.     Plaintiffs in the present case have been subjected to Defendants' unreviewable noncompliance civil penalties, despite having taken diligent steps to cure the alleged DOB code

16

violations, in deprivation of their due process rights.

**Plaintiff Joseph R. Elie Jr.**

93.　Starting in 2021, Defendants subjected Plaintiff, Joseph R. Elie Jr., to the DOB's unconstitutional code enforcement process and ensuing continued non-compliance civil penalties.

94.　Specifically, on May 25, 2021, the DOB's Emergency Response Team ("ERT") visited the residential building owned by Plaintiff Eli, located at 109-15 Springfield Boulevard, Queens, New York 11429, after receiving notice from the New York Fire Department of alleged possible damage to the building's façade.

95.　During the visit, the ERT inspected the building and issued three (3) reviewable civil penalties—two of which were unrelated to the purpose of their initial visit.

96.　The first—and only penalty connected to the purpose of the ERT's visit—was a reviewable penalty for allegedly failing to maintain the building in a code compliant manner.[6] The second reviewable penalty was for allegedly performing work without a permit.[7] The third reviewable penalty was for allegedly converting the dwelling into a multifamily home.[8] The hearing date for each reviewable penalty was initially set for August 17, 2021, but was not ultimately held until March 8, 2022.

97.　Before any hearing could be held for these alleged violations, the DOB issued two additional reviewable civil penalties for failing to comply with the DOB's initial work without a permit penalty. The first was issued on September 29, 2020.[9]　The DOB set a hearing for this penalty for December 28, 2021, found Plaintiff Elie in default, and imposed a fine of $6,250. The

---

[6] The ECB violation number is 35507682R.
[7] The ECB violation number is 35507683Z.
[8] The ECB violation number is 35507684K.
[9] ECB violation number 35563376P.

second was issued on February 14, 2022.[10] The hearing date for this violation was set for November 15, 2022, and a fine of $1,250 was imposed.

98.     The additional civil penalties, scheduled hearing and fine for "failure to comply with the commissioner's order" were all imposed before any hearing was conducted on the initial penalty containing the commissioner's order.

99.     Along with the two additional reviewable civil penalties, the DOB also issued two unreviewable civil penalties, each carrying a fine of $1,500,[11] before any hearing could occur on the alleged violations issued on May 25, 2021.

100.     Thus before any hearing occurred on these alleged violations, the DOB issued fines totaling $9,250.

101.     When the hearing for all three reviewable civil penalties actually occurred on March 8, 2022, the DOB issued an additional $6,250 for the first penalty relating to failing to maintain the building in a code complaint manner, $2,603.56 for the second penalty relating to work without a permit, and $2,603.56 for the third penalty relating to converting the building into a multifamily dwelling.

102.     While a hearing did eventually occur for the three initial reviewable civil penalties, Plaintiff was not given the opportunity to dispute the $3,000 associated with the two unreviewable civil penalties,[12] nor was Plaintiff Elie given the opportunity to meaningfully dispute the $7,500 associated with the two additional reviewable civil penalties concerning failure to comply and the initial work without a permit penalty,[13] as these civil penalties were issued before a hearing actually

---

[10] ECB violation number is 35569161P.
[11] DOB civil penalty nos. 00587 and 00588 were issued on August 18, 2021.
[12] DOB civil penalty nos. 00587 and 00588.
[13] ECB violation nos. 35563376P and 35569161P.

occurred for the initial penalty. Plaintiff Elie's only option was to pay the DOB's fines, or continue to face additional non-compliance fines, in violation of due process rights.

**Plaintiff 714 Lex Acquisition LLC**

103.    Starting in August 2023, Defendants began subjecting Plaintiff 714 Lex Acquisition LCC, to the DOB's unconstitutional code enforcement process and ensuing noncompliance civil penalties.

104.    Specifically, on August 11, 2023, Defendants issued six (6) unreviewable civil penalties for $3,000 each, totaling $18,000, related to the filing of elevator inspection reports.[14]

105.    The unreviewable civil penalties were a part of the DOB's 'document dump,' a process where the DOB issued civil penalties reaching back to the five-year period covering 2018, 2019, 2020, 2021, and 2022.

106.    The unreviewable civil penalties issued to Plaintiff were for the years 2018, 2019, 2020, 2021, and 2022.

107.    During these years, Plaintiff was unable to access the property as beginning in or about 2017 the property's tenant became unresponsive and refused to allow Plaintiff access to the premises. This continued until the tenant was evicted in or about September 2022.

108.    Thus, even if Plaintiff had been aware of its alleged non-compliance with the DOB's regulations, Plaintiff could not access the property to conduct elevator inspections during the relevant time period.

109.    The 'elevator' in question is a dumbwaiter that poses no danger to the public.

---

[14] DOB civil penalty nos. are VIO-FTF-VT-CAT1-202212-0006220, VIO-FTF-VT-PER-202212-0003681, VIO-FTF-VT-CAT1-202112-0005593, VIO-FTF-CT-CAT1-202012-0007357, VIO-FTF-VT-CAT1-201912-0005520, and VIO-FTF-VT-CAT1-201812-0006828.

110.    Before receiving these unreviewable civil penalties in Fall of 2023, Plaintiff had no notice of its alleged non-compliance with the DOB's regulations.

111.    Plaintiff has not been given a meaningful opportunity to dispute these civil penalties and is instead being forced to exercise its sole option of paying the DOB's fine, in violation of due process rights.

**Plaintiff CCSM LLC 7626 Fifth Avenue**

112.    Starting in September 2021, Defendants began subjecting Plaintiff, CCSM LLC, to the DOB's unconstitutional code enforcement process and ensuing noncompliance civil penalties.

113.    First, on September 23, 2021, a DOB employee issued Plaintiff a reviewable penalty for various alleged issues with the premises—including issues with one of the building's fire escapes.[15] Along with the penalty was a hearing date set for December 29, 2021.

114.    Before the hearing could occur, DOB employees issued two more reviewable civil penalties concerning—at least in part—the same fire escape.[16]

115.    On top of the three reviewable civil penalties, DOB employees also issued one unreviewable penalty before the hearing date.[17]

116.    Thus, within two months, Defendants issued four civil penalties—with fines totaling nearly $30,000—before giving Plaintiff *any* opportunity to challenge the allegations.

117.    After the hearing, Plaintiff was given two more unreviewable civil penalties, totaling $6,000.[18]

---

[15] The ECB violation number is 39046456P.
[16] ECB violation number 35586669K was issued on October 8, 2021. ECB violation number 35615889K was issued on November 18, 2021
[17] DOB civil penalty number 00350 was issued on November 24, 2021.
[18] DOB civil penalty number 00349 was issued on January 5, 2022. DOB civil penalty number 00335 was issued on February 16, 2022.

118.     While hearing dates were set for the three reviewable civil penalties, no hearing ever occurred for the three attached unreviewable civil penalties. Because Plaintiff was not provided the opportunity to challenge the DOB's civil penalties, Plaintiff's only option was to pay the DOB's fines, or continue to face additional non-compliance fines, in violation of due process rights.

**Plaintiff 301-303 West 125 LLC**

119.     Starting in August 2021, Defendants began subjecting Plaintiff, 301-303 West 125 LLC, to the DOB's unconstitutional code enforcement process and ensuing noncompliance civil penalties.

120.     First, on August 28, 2021, a DOB employee issued a reviewable penalty for allegedly failing to install a door lock monitoring system on an elevator within the building.[19] Along with the penalty was a hearing date for December 16, 2021, which was ultimately rescheduled to April 28, 2022.

121.     Before a hearing could occur, the DOB issued an unreviewable penalty on December 22, 2021, which carried a fine of $3,000.[20]

122.     Plaintiff was never given an opportunity to challenge the unreviewable penalty, and was instead forced to pay the DOB's fine, or continue to face additional non-compliance fines, in violation of due process rights.

**Plaintiff Flatbush Delaware Holding LLC**

123.     Starting in August 2021, Defendants began subjecting Plaintiff Flatbush Delaware Holdings LLC, to the DOB's unconstitutional code enforcement process and ensuing

---

[19] The ECB violation number is 39046881X.
[20] DOB civil penalty number is 00202.

noncompliance civil penalties.

124.    First, on August 4, 2021, a DOB employee issued a reviewable penalty for an allegedly out of service elevator.[21] Along with the penalty was a hearing date set for January 5, 2022.

125.    Before the hearing could occur, the DOB issued an unreviewable penalty with an associated fine of $3,000 on November 10, 2021.[22]

126.    Plaintiff was not provided the opportunity to challenge this unreviewable penalty. Rather, Plaintiff's only option was to pay the DOB's fine, or continue to face additional non-compliance fines, in violation of due process rights.

127.    Plaintiff was again subjected to the DOB's unconstitutional code enforcement process when on August 8, 2022, a DOB employee issued a reviewable penalty for allegedly failing to provide an unobstructed exit passageway.[23] Plaintiff admitted to being in fault and paid a fine of $1,250 to resolve the issue.

128.    Over a year after the initial alleged violation and long after Plaintiff paid the DOB's fine, the DOB issued another penalty—this time an unreviewable penalty totaling $5,000.[24]

129.    Plaintiff has not been given the opportunity to challenge this penalty and is facing the sole option of paying the DOB's fine, or continue to face additional non-compliance fines, in violation of due process rights.

**Plaintiff 3684 Nostrand Ave. Associates LLC**

130.    Starting in April 2023, Defendants began subjecting Plaintiff Nostrand LLC, to the

---

[21] ECB violation number is 039045499K.
[22] DOB civil penalty number is 00385.
[23] The ECB violation number is 39067562L.
[24] DOB civil penalty number is 01789.

DOB's unconstitutional code enforcement process and ensuing noncompliance civil penalties.

131. Specifically, over the course of two months Defendants issued 10 unreviewable civil penalties for $1,000 each, totaling $10,000, related to the filing of boiler inspection reports.[25]

132. The unreviewable civil penalties were a part of the DOB's 'document dump,' a process where the DOB issued unreviewable civil penalties reaching back to the five-year period covering 2018, 2019, 2020, 2021, and 2022.

133. Before receiving these unreviewable civil penalties in spring and summer of 2023, Plaintiff had no notice of its alleged non-compliance with the DOB's regulations, nor has Plaintiff been given a meaningful opportunity to dispute these civil penalties since receiving them, in violation of due process rights.

**Plaintiff 837 Utica Avenue LLC**

134. Starting in April 2023, Defendants began subjecting Plaintiff 837 Utica Avenue LLC, to the DOB's unconstitutional code enforcement process and ensuing noncompliance civil penalties.

135. Specifically, over the course of two months Defendants issued five (5) unreviewable civil penalties for $1,000 each, totaling $5,000, related to the filing of boiler inspection reports.[26]

136. The unreviewable civil penalties were also a part of the DOB's 'document dump,' a process where the DOB issued civil penalties reaching back to the five-year period covering

---

[25] DOB civil penalty nos. 00651 and 01785 were issued on April 25, 2023. DOB civil penalty nos. 00520, 01730, 02959, and 04102 were issued on June 20, 2023. DOB civil penalty nos. 00498, 01651, 02873, and 04005 were issued on June 30, 2023.

[26] DOB civil penalty number 15115 was issued on April 25, 2023. DOB civil penalty nos. 09783 and 31669 were issued on June 20, 2023. DOB civil penalty nos. 23002 and 43853 were issued on June 30, 2023.

2018, 2019, 2020, 2021, and 2022.

137.    Before receiving these unreviewable civil penalties in spring and summer of 2023, Plaintiff had no notice of its alleged non-compliance with the DOB's regulations.

138.    Plaintiff was not given a meaningful opportunity to dispute these civil penalties, and was instead forced to pay the DOB's fine, in violation of due process rights.

**Plaintiff 600 Broadway Partners LLC**

139.    Starting in August 2023, Defendants began subjecting Plaintiff 600 Broadway Partners LLC, to the DOB's unconstitutional code enforcement process and ensuing noncompliance civil penalties.

140.    Specifically, over the course of three months, Defendants issued thirteen (13) unreviewable civil penalties for $3,000 each, totaling $39,000, related to the filing of elevator inspection reports. [27]

141.    The unreviewable civil penalties were a part of the DOB's 'document dump,' a process where the DOB issued civil penalties reaching back to the five-year period covering 2018, 2019, 2020, 2021, and 2022.

142.    Before receiving these unreviewable civil penalties in fall of 2023, Plaintiff had no notice of its alleged non-compliance with the DOB's regulations.

143.    Plaintiff has not been given a meaningful opportunity to dispute these civil penalties

---

[27] DOB civil penalty nos. VIO-FTF-VT-CAT1-201812-0000482, VIO-FTF-VT-CAT1-201912-0000492, VIO-FTF-VT-CAT1-201812-0007763, VIO-FTF-CT-CAT1-201812-0000483, VIO-FTF-VT-CAT1-201912-0000493, and VIO-FTF-VT-CAT1-201912-0006410 were issued on August 8, 2023. DOB civil penalty nos. VIO-FTC-VT-PER-202212-0001340 and VIO-FTC-VT-PER-202212-0007846 were issued on October 2, 2023. DOB civil penalty nos. VIO-FTC-VT-CAT1-202212-0012191, VIO-FTC-VT-CAT1-202212-0000239, VIO-FTC-VT-CAT1-202212-0009404, VIO-FTC-VT-CAT1-201912-0002073, and VIO-FTC-CAT10202012-0002367 were issued on October 23, 2023.

and is instead facing the sole option of paying the DOB's fines, in violation of due process rights.

## VI.    CLASS ACTION ALLEGATIONS

144.    Plaintiffs incorporate by reference the preceding allegations of this Complaint.

145.    Plaintiffs file the present action on behalf of themselves and all others similarly situated, for violations of their due process rights under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983, stemming from the DOB's unconstitutional building and construction code enforcement process and ensuing unreviewable  continued noncompliance civil penalties. In addition to damages for the Class, this action seeks attorney's fees, costs, interest, exemplary or punitive damages and any and all other relief to which Plaintiffs show themselves and the Class to be justly entitled.

146.    Plaintiffs propose the following Class definition:

All persons, firms, and/or legal entities that: (1) own real property within the geographic jurisdiction of the NYC Department of Buildings; (2) who have been imposed unreviewable civil penalties by the NYC Department of Buildings for Building Code and/or Construction Code violation(s); (3) without being afforded due process to challenge or appeal said unreviewable civil penalties; (4) from May 3, 2021, to the present.

147.    Excluded from the Class are Defendants as well as their agents and employees, Plaintiffs' attorneys and their employees, the Judge to whom the action is assigned as well as any member of the Judge's staff and immediate family.

148.    Numerosity: The Class is so numerous that joinder of all members of the Class is impracticable. The precise size of the class is unknown to Plaintiffs at this time, but is believed to be more than 2,500. The precise number of persons in the Class and their identities may be ascertained from Defendants' records.

149.    Commonality: There is a well-defined community of interest in the questions of

25

law and fact involved affecting the parties to be represented. These common questions of law and

fact exist as to all members of the Class and predominate over any questions affecting only

individual members of the Class. These common factual and legal questions include without

limitation:

a.  Whether the DOB's policy, custom and practice of assessing additional civil
    penalties for continued noncompliance, during the time period in which cited
    parties are taking affirmative steps to make corrections to cure DOB Code
    violations, without a procedure to challenge or appeal said additional civil
    penalties, infringes on the due process rights of cited parties.

b.  Whether the DOB's policy, custom and practice of requiring a cited party to pay all
    fines assessed for unreviewable violations before being afforded the opportunity to
    challenge or appeal reviewable violations, infringes on the due process rights of
    cited parties.

c.  Whether the DOB's policy, custom and practice of requiring that a cited party pay
    all fines for any unreviewable violations before being granted a work permit to
    make the necessary repairs to cure DOB Code violations, infringes on the due
    process rights of cited parties.

d.  Whether the DOB's policy, custom and practice of automatically issuing a separate
    unreviewable violation citation when a cited party receives a reviewable violation
    citation for performing work without a permit, infringes on the due process rights
    of cited parties.

e.  Whether Defendants violated their duty to provide due process by enforcing,
    collecting, and retaining fines issued to Plaintiffs and Class members without due
    process.

f.  Whether Defendants interfered with fundamental property interests possessed by
    Plaintiffs and Class members by, among other things, (i) issuing unreviewable
    violations to Plaintiffs and Class members that they could not contest, appeal, or
    have reviewed by a court of competent jurisdiction and leaving Plaintiffs and Class
    members with only the option to pay or default; (ii) failing to mandate the City's
    return of any fines collected pursuant to unreviewable violations; (iii) failing to
    provide a forum for consideration of the reviewable violations that followed New
    York's rules of evidence or civil practice, or similar rules and procedures; (iv)
    failing to provide a forum for the consideration of constitutional questions and an
    avenue for meaningful appellate review; (v) fining Plaintiffs and Class members
    while they sought a work permit from the City to cure the alleged Code violations;
    (vi) continuing to issue multiple notices of violation for a single condition; (vii)
    seeking to maximize fines when these fines benefit the City by directly increasing
    the City's general treasury; (viii) conditioning Plaintiffs' and Class members'

ability to access both administrative appeals and judicial review on the payment of all fines assessed against Plaintiffs and Class members; (ix) failing to provide adequate notice both of what was necessary to come into compliance, which led to the accumulation of multiple additional civil penalties, which could not be challenged or appealed in ECB/OATH proceedings; and (x) otherwise failing to provide process that guarded against the risk of erroneous deprivation.

g. Whether Defendants had the ability to provide due process to Plaintiffs and Class members in conformity with the Fourteenth Amendment.

h. Whether Defendants had a legitimate governmental interest in depriving Plaintiffs and Class members of their property without due process.

i. Whether Defendants' failure to provide sufficient process to Plaintiffs and Class members was conducted pursuant to a policy, practice, or custom that violated the Fourteenth Amendment to the U.S. Constitution.

j. Whether Defendants have acted under color of state law in violating Plaintiffs' and Class members' rights pursuant to the Fourteenth Amendment to the U.S. Constitution.

k. Whether Defendants could have provided additional safeguards to its processes that would have reduced the due process violations it imposed on Plaintiffs and Class members

150.    Typicality: Plaintiffs' claims are typical of the proposed Class because all members of the Class were subjected to the same DOB policy, customs and practices related to the imposition of unreviewable continuing noncompliance civil penalties for DOB Code violations.

151.    Adequacy of Representation: Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class. Plaintiffs do not have any interests antagonistic to those of the proposed Class. Plaintiffs have retained counsel competent and experienced in complex litigation of this type.

152.    Common questions of law and fact with respect to the constitutional issues, liability issues, relief issues, and anticipated affirmative defenses predominate over any questions affecting only the individual members of the Class. Defendants subjected Plaintiffs and members of the

proposed Class to the same DOB policy, customs and practices related to the imposition of unreviewable continuing noncompliance civil penalties for DOB Code violations, in violation of the due process rights of Plaintiffs and the members of the Class.

153.    A class action is a superior method for the fair and efficient adjudication of this controversy. The expense and burden of individual suits make it impracticable for members of the proposed Class to prosecute their claims individually. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small. In addition, Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Individualized litigation increases the expense and delay to all parties and the court system. By contrast, class adjudication presents far fewer management difficulties, and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.   CAUSE OF ACTION

**Violation of Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution pursuant to 42 U.S.C. § 1983**

154.    Plaintiffs incorporate by reference the preceding allegations of this Complaint.

155.    Defendants, acting under color of law, caused Plaintiffs and  Class members to be deprived of their  property without due process of law in violation of the Due Process Clause of the Fourteenth Amendment of the Constitution.

156.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution requires that, before a person may be deprived of his or her property, the person be provided notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

157.    Defendants had a duty under the Fourteenth Amendment to the U.S. Constitution to provide Plaintiffs and Class members with notice and a meaningful opportunity to be heard prior

to depriving them of their property, as asserted herein, and to conduct the City's administrative processes in accordance with due process.

158.    Defendants violated their duty to ensure due process by denying Plaintiffs and Class members of a fair or meaningful opportunity to be heard, as asserted herein, thereby creating an unreasonable risk of erroneous deprivation.

159.    By requiring full prepayment of fines associated with reviewable violations to access an administrative appeal and then judicial review, the Defendants effected a pre-hearing deprivation of Plaintiffs and  Class members and denied them due process.

160.    Plaintiffs and  Class members possessed a fundamental property interest protected by the Fourteenth Amendment to the U.S. Constitution, in their real property, earnings, income, and capital.

161.    This interest is one of historical and continuing importance.

162.    Defendants interfered with this interests possessed by Plaintiffs and  Class members by, among other things, (i) issuing unreviewable violations to Plaintiffs and  Class members that they could not contest, appeal, or have reviewed by a court of competent jurisdiction and leaving Plaintiffs and  Class members with only the option to pay or default; (ii) failing to mandate the City's return of any fines collected pursuant to unreviewable violations; (iii) failing to provide a forum for consideration of the reviewable violations that followed New York's rules of evidence or civil practice, or similar rules and procedures; (iv) failing to provide a forum for the consideration of constitutional questions and an avenue for meaningful appellate review; (v) fining Plaintiffs and  Class members while they sought a work permit from the City to cure the alleged Code violations; (vi) continuing to issue multiple notices of violation for a single condition; (vii) seeking to maximize fines when these fines benefit the City by directly increasing the City's

general treasury; (viii) conditioning Plaintiffs' and Class members' ability to access both administrative appeals and judicial review on the payment of all fines assessed against Plaintiffs and Class members; (ix) failing to provide adequate notice both of what was necessary to come into compliance, which led to the accumulation of multiple additional civil penalties, which could not be challenged or appealed in ECB/OATH proceedings; and (x) otherwise failing to provide process that guarded against the risk of erroneous deprivation.

163.    In so doing, Defendants deprived Plaintiffs and Class members of the due process they are entitled to under the Fourteenth Amendment to the U.S. Constitution.

164.    Defendants also violated their duty to provide due process by enforcing, collecting, and retaining fines issued to Plaintiffs and Class members without due process.

165.    The City had the ability to provide due process to Plaintiffs and Class members in conformity with the Fourteenth Amendment.

166.    The City's governmental interests cannot justify the violation of Plaintiffs' and Class members' due process rights.

167.    The burden of providing sufficient process to Plaintiffs and Class members did not outweigh Plaintiffs' and Class members' interest in a fair, open, and accurate process.

168.    Any appellate review available to Plaintiffs and Class members was constitutionally deficient and cannot compensate for or cure the lack of meaningful pre-deprivation process.

169.    Defendants' behavior was arbitrary and shocking to the conscience and was so brutal and offensive as to not comport with traditional ideas of fair play and decency.

170.    Defendants had no legitimate governmental interest in depriving Plaintiffs and Class members of their property without due process.

171.    Defendants' failure to provide sufficient process to Plaintiffs and  Class members was conducted pursuant to a policy, practice, or custom that violated the Fourteenth Amendment to the U.S. Constitution.

172.    Defendants have acted under color of state law in violating Plaintiffs' and  Class members' rights pursuant to the Fourteenth Amendment to the U.S. Constitution.

173.    As a direct and proximate result of the Defendants' actions, Plaintiffs and  Class members suffered irreparable injury to their constitutional rights.

174.    Defendants could have provided additional safeguards to its processes that would have reduced the due process violations it imposed on Plaintiffs and  Class members.

175.    As such, Defendants violated the due process rights of Plaintiffs and Class members and are thus liable to them under 42 U.S.C. § 1983.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

a.    That Defendants be duly cited to appear and answer herein;

b.    For a declaration that Defendants' systemic policies, practices, and customs, as set forth herein, on their face and as applied to Plaintiffs and Class members violated the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution;

c.    For an order enjoining the application and enforcement of the practices described in this Complaint as a violation of due process;

d.    For judgment in favor of Plaintiffs and the proposed Class members requiring Defendants to provide restitution, with interest, to Plaintiffs and Class members for all civil penalties, fines, and fees issued pursuant to constitutionally deficient procedures;

e.    That the Court enter an order certifying this action as a class action;

f.    That the Court enter an order appointing Plaintiffs as Class Representatives, and appointing undersigned counsel as Class Counsel to represent the Class;

g.    Money damages;

     h.      Exemplary or punitive damages;

     i.       For an award of attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable statute or rule, or in equity; and

     j.      For such other and further relief as this Court may deem just and proper.

DATED: May 3, 2024.

Respectfully submitted,

**THE CARLSON LAW FIRM, P.C.**
488 Madison Avenue, 20th Floor
New York, New York 10022
(917) 319-9758 – Telephone
(516) 506-7695 – Facsimile

By:   _/s/ Luis Muñoz_
       Luis Muñoz
       LMunoz@carlsonattorneys.com

**THE FINK LAW FIRM, P.C.**
488 Madison Avenue, 20th Floor
New York, New York 10022
(212) 280-6600 – Telephone
(516) 506-7695 – Facsimile

By:   _/s/ Steven M. Fink_
       Steven M. Fink
       SFink@thefinklawfirmpc.com

**ATTORNEYS FOR PLAINTIFFS**